**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JOSHUA RYAN SERIER, | Case No.: 3:25-cv-00762-ART-CSD |
| Plaintiff | **Order** |
| v. | Re: ECF No. 1, 1-1 |
| STATE OF NEVADA, et al., | |
| Defendants | |

Plaintiff, who is an inmate in the custody of the Nevada Department of Corrections (NDOC), has filed an application to proceed in forma pauperis (IFP)[1] (ECF No. 1) and a pro se complaint (ECF No. 4-1).

**I. IFP APPLICATION**

A person may be granted permission to proceed IFP if the person "submits an affidavit that includes a statement of all assets such [person] possesses [and] that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915(a)(1).

The Local Rules of Practice for the District of Nevada provide: "Any person who is unable to prepay the fees in a civil case may apply to the court for authority to proceed [IFP]. The application must be made on the form provided by the court and must include a financial affidavit disclosing the applicant's income, assets, expenses, and liabilities." LSR 1-1.

---

[1] While Plaintiff did not file his application on the court's form for incarcerated inmates, his submission on the more general IFP form includes all the necessary information, and he has additional provided the required financial certificate signed and completed by an officer of the facility (ECF No. 1 at 3), inmate trust account statement, and signed financial acknowledgment (ECF No. 1-1 at 10).

"[T]he supporting affidavits [must] state the facts as to [the] affiant's poverty with some particularity, definiteness and certainty." *U.S. v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981) (quotation marks and citation omitted). A litigant need not "be absolutely destitute to enjoy the benefits of the statute." *Adkins v. E.I. Du Pont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

An inmate submitting an application to proceed IFP must also "submit a certificate from the institution certifying the amount of funds currently held in the applicant's trust account at the institution and the net deposits in the applicant's account for the six months prior to the date of submission of the application." LSR 1-2; *see also* 28 U.S.C. § 1915(a)(2). If the inmate has been at the institution for less than six months, "the certificate must show the account's activity for this shortened period." LSR 1-2.

If a prisoner brings a civil action IFP, the prisoner is still required to pay the full amount of the filing fee. 28 U.S.C. § 1915(b)(1). The court will assess and collect (when funds exist) an initial partial filing fee that is calculated as 20 percent of the greater of the average monthly deposits or the average monthly balance for the six-month period immediately preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1)(A)-(B). After the initial partial filing fee is paid, the prisoner is required to make monthly payments equal to 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency that has custody of the prisoner will forward payments from the prisoner's account to the court clerk each time the account exceeds $10 until the filing fees are paid. 28 U.S.C. § 1915(b)(2).

Plaintiff's certified account statement indicates that, as of December 16, 2025, his average monthly balance for the prior six months was $28.57, and his average monthly deposits were $243.33. However, his current account balance, as of that date, was $0.12.

Plaintiff's application to proceed IFP will be granted, but the court will not require payment of an initial partial filing fee. Whenever Plaintiff's prison account exceeds $10, he must make monthly payments in the amount of 20 percent of the preceding month's income credited to his account until the $350 filing fee is paid.

## I. SCREENING

**A. Standard**

Under the statute governing IFP proceedings, "the court shall dismiss the case at any time if the court determines that-- (A) the allegation of poverty is untrue; or (B) the action or appeal-- (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(A), (B)(i)-(iii).

In addition, under 28 U.S.C. § 1915A, "[t]he court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In conducting this review, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2).

Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) track that language. As such, when reviewing the adequacy of a complaint under these statutes, the court applies the same standard as is applied under Rule 12(b)(6). *See e.g. Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Review under Rule

12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000) (citation omitted).

The court must accept as true the allegations, construe the pleadings in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Allegations in pro se complaints are "held to less stringent standards than formal pleadings drafted by lawyers[.]" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks and citation omitted).

A complaint must contain more than a "formulaic recitation of the elements of a cause of action," it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (citation and quotation marks omitted). At a minimum, a plaintiff should include "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A dismissal should not be without leave to amend unless it is clear from the face of the complaint that the action is frivolous and could not be amended to state a federal claim, or the district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

**B. Plaintiff's Complaint**

In his complaint filed pursuant to 42 U.S.C. § 1983, Plaintiff names twenty defendants and asserts Fifth and Fourteenth Amendment Due Process violations, as well as one claim of First Amendment retaliation.

Plaintiff names as defendants: (1) the State of Nevada; (2) Nevada Attorney General Aaron Ford; (3) Judge John Schlegelmilch; (4) District Attorney Stephen Rye; (5) Deputy District Attorney Sean Neahusan; (6) Public Defender Kale Brock; (7) Lyon County Sheriff Brad Pope; (8) Lyon County Sheriff's Deputy Ray; (9) Court Clerk Mindy; (10) Judge Leon Aberasturi; (11) Lake's Crossing Director Brenda J. Enders; (12) paralegal Judy Castaneda; (13) Board of County Commissioners John or Jane Doe; (14) paralegal Krystal; (15) Lyon County Detention Center Commander Powell; (16) Sheriff's Lieutenant Vandiver Sr.; (17) Nevada Division of Public and Behavioral Health Director Dena Schmidt; (18) Sara Smith, staff at Rural Nevada Counseling; (19) Shelby, counselor at FASTT Lyon County Nevada; and (20) Kris Homan, counselor at Nevada Division of Public and Behavioral Health.

The facts that can be gleaned from the complaint are as follows.

On August 25, 2025, Plaintiff was declared incompetent to stand trial and ordered to Lake's Crossing for competency restoration. As of December 12, 2025, however, he was still in the Lyon County Detention Facility without having been transferred for restoration. Although Plaintiff was accepted to an alternative facility, New Dawn, he was -- for some unclear reason -- not allowed to enter treatment there. Plaintiff's defense attorney (public defender), Kale Brock, failed to file a motion to have his charges dismissed despite promising to do so. (ECF No. 1-1 at 6-8.)

Plaintiff's complaint is, in large part, a series of conclusory phrases untethered to any facts, and sentences that – while containing facts -- cannot be clearly interpreted. As a result, the exact sequence of events, and what specifically was done by which defendant, is difficult to discern. Plaintiff seems to allege that the finding of his incompetence was "court manipulated." (*Id.* at 7.) He alleges that his "languishing" in Lyon County Detention without restoration was

the fault of the D.A.s, Stephen Rye and Sean Neahasan, "in alliance with" Brock, Lake's Crossing and the Nevada Division of Behavioral and Public Health. He asserts the Lyon County Sheriff's Office and the "compiling list of defendants" were aware of this "intentional limbo." (*Id.* at 6.) He asserts that Brock, FASTT, Rural Nevada Counseling, Sean Neahusan, and the Lyon County Sheriff "neglected the approval of acceptance to New Dawn for an alternative which had readily available beds." (*Id.* at 7.) Judge Schlegelmilch apparently accepted "this," but what exactly "this" means is unclear. (*Id.*) There is also possibly an assertion about a hearing on September 29, but what exactly happened at that hearing is again unclear.

Section 1983 provides a mechanism for the private enforcement of substantive rights conferred by the Constitution and federal statutes. Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks and citation omitted).

To obtain relief pursuant to section 1983, a plaintiff must establish a "(1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991); *West v. Atkins*, 487 U.S. 42, 48-49 (1988). To adequately plead the § 1983 elements, a complaint must identify what constitutional right each defendant violated and provide sufficient facts to plausibly support each violation. *See e.g., Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (noting defendants must personally participate in misconduct to be liable under section 1983); *see also Hines v. Yousef*, 914 F.3d 1218, 1228 (9th Cir. 2019) (defendant must have "personally played a role in violating the Constitution.").

The "threshold inquiry in a § 1983 suit" requires courts "to 'identify the specific constitutional right' at issue." *Manuel v. City of Joliet*, 580 U.S. 357, 370 (2017) (citing *Albright*, 510 U.S. at 271). "After pinpointing that right, courts still must determine the elements of, and rules associated with, an action seeking damages for its violation." *Id*. (citing *Carey v. Piphus*, 435 U.S. 247, 257-58 (1978)).

A. Defense Attorney and Paralegals

The public defender, when acting in role of advocate, is not a State actor for purposes of section 1983. *See Georgia v. McCollum*, 505 U.S. 42, 53 (1992); *Polk County v. Dodson*, 454 U.S. 312, 320-25 (1981); *Jackson v. Brown*, 513 F.3d 1057, 1079 (9th Cir. 2008). But where a public defender is performing administrative or investigative functions, he or she may be acting under color of state law. *Vermont v. Brillon*, 556 U.S. 81, 91, n.7 (2009); *see also Miranda v. Clark County*, 319 F.3d 465 (9th Cir. 2003) (claim against the administrative head of the county public defender's office that determined overall allocation of office resources could proceed under 1983).

The complaint does not contain any factual allegations to suggest that attorney Brock's actions, or lack thereof, were taken in other than his role of advocate. In fact, the only clear allegation in the complaint is that he and his paralegals failed to file a motion they promised to file. As it stands, Plaintiff has failed to allege any facts that would render his defense attorney or his paralegals state actors for § 1983 purposes. These defendants will therefore be dismissed from this action, without prejudice and with leave to amend.

B. Judges and Court Personnel

The complaint contains no factual allegations against Judge Aberasturi or court clerk Mindy. Plaintiff has therefore failed to state a plausible claim that either Judge Aberasturi or

Mindy personally participated in a violation of his constitutional rights, and they will therefore be dismissed from this action, without prejudice and with leave to amend.

Judge Schlegelmilch is alleged to have ordered Plaintiff for a competency evaluation and then entered an order finding Plaintiff incompetent and ordering him transferred to Lake's Crossing for restoration proceedings.[2]

Judges are entitled to absolute immunity for acts performed in their judicial capacity. *See In re Castillo*, 297 F.3d 940, 947 (9th Cir. 2002) (judicial immunity is "a 'sweeping form of immunity' for acts performed by judges that relate to the 'judicial process.' . . . This absolute immunity insulates judges from charges of erroneous acts or irregular action, even when it is alleged that such action was driven by malicious or corrupt motives, . . . or when the exercise of judicial authority is 'flawed by the commission of grave procedural errors.'") (citations omitted). The Eleventh Amendment grants a state court judge immunity unless the judge acts "in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 12 (1991).

The allegations against Judge Schlegelmilch are based on actions taken in his judicial capacity and are thus protected by absolute immunity. Judge Schlegelmilch must therefore be dismissed from this action, without prejudice and with leave to amend.

C. <u>State of Nevada</u>

States are not persons for purposes of section 1983. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 (1997); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The State of Nevada must therefore be dismissed from this action.

---

[2] As noted above, there are possibly additional allegations against Judge Schlegelmilch, but what those allegations might be is unclear. In addition, although Plaintiff refers to the psychologists who found him incompetent as "court manipulated," he offers no facts in support of this conclusory assertion.

D. <u>Deputy District Attorney Sean Neahusan</u>

The complaint's allegations against Deputy D.A. Neahusan are either unclear or unsupported by any facts. Plaintiff alleges that Neahusan, "in alliance with" others, is responsible for the fact Plaintiff remained in Lyon County Detention for 110 days without restoration. This is a conclusory assertion unsupported by any facts or explanation of how Neahusan was supposedly responsible for the failure to transfer Plaintiff for restoration. Likewise, it is not clear what Plaintiff means when he asserts that Neahusan "neglected the approval of acceptance to New Dawn as an alternative" and defended Brock's inaction in the case. (ECF No. 1-1 at 7-8.) Accordingly, Plaintiff has failed to state any colorable claim of violation against Neahusan.

Further, it is likely Neahusan would be protected by absolute immunity for actions taken during Plaintiff's criminal proceedings. In *Imbler v. Pachtman*, 424 U.S. 409 (1976), the Supreme Court held that prosecutors may claim absolute immunity from damages liability for actions "intimately associated with the judicial phase of the criminal process," such as the initiation of the prosecution and presentation of the state's case. 424 U.S. at 430. Such immunity "protects the prosecutor from harassing litigation that would divert his time and attention from his official duties" and "enables him to exercise independent judgment when 'deciding which suits to bring and in conducting them in court.'" *Kalina v. Fletcher*, 522 U.S. 118, 125 (1997) (quoting *Imbler*, 424 U.S. at 424); *see also Lacey . Maricopa Cnty.*, 693 F.3d 896, 912 (9th Cir. 2012) (en banc).

"[T]he actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). The inquiry focuses on "the nature of the function performed, not the identity of the actor who performed it." *Kalina*, 522 U.S. at 125 (citation and quotation marks omitted). The prosecutor has absolute

immunity "when performing the traditional functions of an advocate." *Id*. at 131. He is not entitled to such immunity when performing the role of "administrator or investigative officer rather than that of advocate." *Id*. at 125 (citation and quotation marks omitted).

Because the nature of Plaintiff's claim is difficult to discern, it is impossible to tell whether he has or can state a plausible claim against Neahusan that would *not* be protected by absolute prosecutorial immunity. Accordingly, Neahusan must be dismissed from this action, without prejudice and with leave to amend.

E. District Attorney Stephen Rye

The only time D.A. Rye is mentioned in the complaint is when Plaintiff alleges Rye and Neahusan were responsible for Plaintiff languishing in Lyon County Detention without being transferred for restoration. Again, the substance of this allegation is unclear. In addition, the complaint does not allege any facts that would suggest a plausible claim for which Rye would not receive prosecutorial immunity. Rye must therefore be dismissed, without prejudice and with leave to amend.

F. Others

The complaint contains no factual allegations against Nevada Attorney General Aaron Ford, Lyon County Sheriff Brad Pope, Lyon County Sheriff's Deputy Ray, Lake's Crossing Director Brenda J. Enders, Board of County Commissioners John or Jane Doe, Lyon County Detention Center Commander Powell, Sheriff's Lieutenant Vandiver Sr., Nevada Division of Public and Behavioral Health Director Dena Schmidt, Sara Smith, staff at Rural Nevada Counseling, Shelby, counselor at FASTT Lyon County Nevada, or Kris Homan, counselor at Nevada Division of Public and Behavioral Health. It does not explain how any of these

individuals personally participated in Plaintiff's alleged constitutional violation. On that basis alone, those defendants must be dismissed.

G. Due Process

The complaint suggests that Plaintiff could state a colorable claim of a Due Process violation based on his prolonged detention following a determination of incompetency. *See Trueblood v. Wash. State Dep't of Social & Health Servs.*, 822 F.3d 1037, 1043 (9th Cir. 2016); *Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1120 (9th Cir. 2003); *Melnek v. Las Vegas Metro. Police Dep't*, No. 2:23-CV-01303-GMN-MDC, 2025 WL 212809, at *2 (D. Nev. Jan. 15, 2025) ("Restorative treatment for incapacitated criminal defendants is a Fourteenth Amendment Due Process right. . . . When a court finds a defendant incompetent, 'the judge shall order the sheriff to convey the defendant forthwith, together with a copy of the complaint, the commitment and the physicians' certificate, if any, into the custody of the Administrator or the Administrator's designee for detention and treatment at a division facility that is secure.' NRS 178.425(1)."). However, because the complaint does not clearly identify who is responsible for the alleged violation -- or how -- it is impossible to evaluate whether Plaintiff has actually stated a claim for relief, and against whom.

The complaint will therefore be dismissed for failure to state a claim. Because Plaintiff could amend his complaint to state a viable claim, he will be granted leave to amend the complaint. Plaintiff is advised that in any amended complaint, he must allege the facts in a plain, direct, and concise manner, as required by Federal Rule of Civil Procedure 8(a) and 8(d), and that he must clearly identify the actions, or inactions, of each named defendant as it relates to each alleged constitutional violation.

### III. CONCLUSION

(1) Plaintiff's IFP application (ECF No. 1) is **GRANTED**. The court will not require payment of an initial filing fee. However, whenever Plaintiff's prison account exceeds $10, he is required to make monthly payments in the amount of 20 percent of the preceding month's income credited to his account until the full $350 filing fee is paid. This is required even if the action is dismissed or is otherwise unsuccessful. The Clerk must SEND a copy of this Order to Lyon County Detention Facility, 911 Harvey Way, Yerington, NV 89447.

(2) The Clerk will **FILE** the complaint (ECF No. 1-1).

(3) The complaint will be **DISMISSED WITHOUT PREJUDICE, WITH LEAVE TO AMEND**.

(4) The Clerk shall **SEND** Plaintiff the instructions for filing a civil rights complaint by an incarcerated individual and form civil rights complaint by an inmate.

(5) Plaintiff has **30 DAYS** from the date of this Order to file an amended complaint curing the deficiencies noted above. The amended complaint must be complete in and of itself without referring or incorporating by reference any previous complaint. Any allegations, parties, or requests for relief from a prior complaint that are not carried forwarded in the amended complaint will no longer be before the court. Plaintiff shall check the box for the first amended complaint on the court's form civil rights complaint and include this case number on the complaint. If Plaintiff fails to file an amended complaint within the 30 days, this action may be dismissed.

///

///

**IT IS SO ORDERED**.

Dated: March 20, 2026

_____

Craig S. Denney
United States Magistrate Judge